IN THE DISTRICT COURT OF
THE SOUTHERN DISTRICT OF NEW YORK

_____

CASE NUMBER 1:2007cv08257

_____

LOUISE CURATOLA, Plaintiff-Appellant

v.

SAINT VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK,
Defendant-Appellee

_____

BRIEF FOR THE PLAINTIFF-APPELLANT

_____

                                  Michael L. Meiselman
                                   Attorney for the Appellant

## TABLE OF CONTENTS

                            Page

Table of Citations..................................................................................3

Opinions below......................................................................................5

Jurisdiction............................................................................................5

Standard of Review...............................................................................5

Statutes Involved..................................................................................5

Questions presented.........................................................................5-6

Statement of the Facts......................................................................6-8

Summary of Argument......................................................................8-9

Argument.........................................................................................9-16

Conclusion............................................................................................16

TABLE OF CITATIONS

CASES

Page

*Bankruptcy Procedure Manual Federal Rules of Bankruptcy*....................................9 ,11
*Procedure Annotated* (2007)
(§ 2002:14 - Notice by Publication)

*Chemtron v. Jones*, 72 F3d 341 (3rd Cir.1995)................................................................10

*Fogel v. Zell*, 221 F3d 955 (7th Cir., 2000)......................................................................9,10

*Kmart Corp.*, 381 F3d 709 (7th Cir., 2004)...................................................................10,11

*Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983)........................................9

*In re Maya Const. Co.,* 78 F3d 1395 (9th Cir. 1996)........................................................11

*Mullane v. Central Hanover Bank & Trust Co.*, 39........................................................ .9,16
U.S. 306 (1950)

*In re O.P.M. Leasing Services, Inc*., 48 B.R. 824 (SDNY, 1985)..................................9

*Rules of Bankruptcy Procedure*, §2002 (1)....................................................................11

*In re Savage Industried, Inc*., 43 F3d 714 (1st Cir.1994)...............................................11

*Matter of Sullivan Ford Sales*, 2 B.R. 350 (B.R. Maine 1980)......................................11

*In re Tannen Towers Corp*., 235 B.R. 748 (D.N.J. 1999)..............................................10

*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S...................................9-10
478, 478, 108 S.Ct. 1340 (1988)

*U.S. v. Borromeo*, 945 F2d 751 (4th Cir. 1991)............................................................9

STATUTES

Page

*Judiciary and Judicial Procedure*
28 U.S.C. § 158(a)(1)..................................................................................5

*Local Rules of Bankruptcy Procedure*
Rule 9013-1(b)...........................................................................................13

*Rules of Federal Bankruptcy Procedure*
Rules 2002(l)..............................................................................................11
3003(c)(3)..................................................................................................12
8001-8020

*U.S.C.A. Const. Amend 14*................................................................................9

**OPINIONS BELOW**

The opinion, denying the appellant leave to file a late proof of claim, of the United States Bankruptcy Court for the Southern District of New York is unreported and contained in the Docket of the Bankruptcy Court for the Southern District of New York (Entered August 8, 2007 - Docket # 3610).

## JURISDICTION

An appeal from a judgement, order, or decree of a bankruptcy judge to a district court is permitted under 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

On an appeal the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. A bankruptcy court's findings of fact, whether based on oral or documentary evidence shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Factual findings must be upheld, if plausible, in the light of the record reviewed in its entirety. A bankruptcy court's legal conclusions are reviewed *de novo*.

## STATUTES INVOLVED

The following statutes are relevant to the determination: U.S.C.A. Const.Amend 14; Rules of Federal Bankruptcy Procedure: Rules 2002(l), 3003(c)(3), 8001-8020; Local Rules of Bankruptcy Procedure, Rule 9013-1(b); Judiciary and Judicial Procedure, 28 U.S.C. § 158(a)(1).

## QUESTIONS PRESENTED

I.    Whether the bankruptcy court erred when it allowed the Appellant to be

classified as "unknown" claimant, thus denying her "due process"?

        II..    Whether the bankruptcy court erred, and denied the appellant "due process" when it permitted the appellant, a "known" claimant, to be notified of the Bar Date by newspaper rather than properly by regular mail.

## STATEMENT OF THE FACTS

Commencing on or about June 9, 2004, and prior and subsequent thereto, plaintiff LOUISE CURATOLA ("Movant") came under the continuous care and treatment of defendant SHERMAN, at his offices, located at 1551 Richmond Road, Staten Island, County of New York, City and State of New York.

It was the duty of defendant SHERMAN to reasonably care for, treat and supervise his patients and, more particularly, the plaintiff herein.

Commencing on or about June 8, 2004, and prior and subsequent thereto, plaintiff LOUISE CURATOLA came under the continuous care and treatment of defendant BONAMO, at his offices located at 1551 Richmond Road, Staten Island, County of New York, City and State of New York.

It was the duty of defendant BONAMO to reasonably care for, treat and supervise his patients and, more particularly, the plaintiff herein.

Commencing on or about September 1, 2004, and prior and subsequent thereto, plaintiff LOUISE CURATOLA came under the continuous care and treatment of defendant SVCMC, at their premises, located at 355 Bard Avenue, Staten Island, County of Richmond, City and State of New York.

It was the duty of defendant SVCMC to reasonably care for, treat and supervise their patients and, more particularly, the plaintiff herein.

Commencing on or about September 1, 2004, and prior and subsequent thereto, plaintiff LOUISE CURATOLA came under the continuous care and treatment of defendant HOSPITAL, at their premises located at 355 Bard Avenue, Staten Island, County of Richmond, City and State of New York.

It was the duty of defendant HOSPITAL to reasonably care for, treat and supervise their patients and, more particularly, the plaintiff herein.

On September 1, 2004, plaintiff LOUISE CURATOLA was admitted to Saint Vincent Catholic Medical Centers, Staten Island Region, located at 355 Bard Avenue, Staten Island, County of Richmond, State of New York.

.On September 8, 2004, plaintiff LOUISE CURATOLA underwent left total shoulder replacement (arthroplasty) at Saint Vincent Catholic Medical Centers, Staten Island Region.

On September 8, 2004, plaintiff LOUISE CURATOLA underwent left total shoulder replacement (arthroplasty) performed by defendants SHERMAN and BONANO.

On May 20, 2005, a magnetic resonance imaging study (MRI) of the plaintiff's left shoulder was performed and the findings were suspicious for infection.

On June 3, 2005, defendant SHERMAN performed an aspiration of the plaintiff's left shoulder, which was positive for infection, including *Serratia* infection.

This fact was not disclosed to movant. See, Exhibit A and B (the medical records of Drs. Sherman and Levine).

On June 30, 2005, Dr. William Levine ("Levine"), another orthopedic surgeon removed the infected left total shoulder arthroplasty and implanted an antibiotic-impregnated cement spacer.

As a direct result of the defendants' carelessness, recklessness and negligence, plaintiff LOUISE CURATOLA was caused to suffer severe and permanent injuries.

Despite her due diligence, the movant, was not able to discover the cause of her infection.

7

Neither Sherman nor Levine informed her about the origin of the problem.

It was not until in or about September 2006 when she told a friend of her son, well-credentialed surgeon, that she learned the true situation concerning her infection.

Her discovery of the cause of the injury came after five months after the Bar Date (March 30, 2006).

It took the movant's attorneys Meiselman & Gordon ("M&G") until March 6, 2007 to verify all relevant facts to file suit against the two doctors but not SVCMC due to the "automatic stay".

The statute of limitations for filing a claim in New York was March 8, 2007. Thus, the lawsuit was timely filed against the two doctors, but not SVCMC, as a result of the Stay and the Bar Date.

M&G filed a motion with the Bankruptcy Court to allow the filing of a Late Proof of Claim on June 19, 2007 (Doc # 3265).

The Court adjourned the motion until August 19, 2007 so that M&G could file a memorandum of law, which was filed on July 30, 2007 (Doc # 3493).

The Court denied the motion to allow the filing of a Late Proof of Claim on August 8, 2007 (Doc # 3610). It is from the denial of this motion that this appeal arises.

**SUMMARY OF ARGUMENT**

First, The bankruptcy judge erred by failing to make findings of fact concerning the Debtors' classification of the Appellant as an "unknown" creditor. Had such findings been made, the bankruptcy court would have realized that the Appellant was, indeed, a "known" creditor under bankruptcy case law. This error breached the Appellant's "due process" constitutional

8

rights.

Second, the bankruptcy court erred again in failing to make findings of fact that allowed the Debtors to notify the Appellant by newspaper rather than by regular mail, as she was a "known" creditor and should have been so noticed. Again, this error breached the Appellant's "due process" constitutional rights.

## ARGUMENT

### I. INADEQUACY OF THE NOTICE OF THE BAR DATE

#### A. THE LEGAL STANDARD

Fair or adequate "Bar Date" notice consists of two basic elements content and delivery. *Fogel v. Zell,* 221 F3d 955, 962 (7th Cir., 2000). If the Notice is not received, then the notice was inadequate unless the mode chosen to deliver it was reasonable. *Mullane v. Central Hanover Bank & Trust Co.,* 39 U.S. 306, 317 (1950). The issue of "notice' is one of "due process", is constitutional in nature, and is found in the fourteenth amendment to the United States Constitution.

There are two means of transmitting the Notice. If the name and address of the claimant are readily ascertainable, then the Notice must be sent directly to the claimant. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 799 (1983), *Mullane,* 306, U.S. at 317, *U.S. v. Borromeo*, 945 F2d 751, 752 (4th Cir. 1991). *In re O.P.M. Leasing Services, Inc.,* 48 B.R. 824, 831 (SDNY, 1985). In other words: "... when a party's name and address are known or reasonably ascertainable, only actual notice satisfies due process." *Bankruptcy Procedure Manual; Federal Rules of Bankruptcy Procedure Annotated* (2007) (§ 2002:14 - Notice by Publication); *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 478, 108 S.Ct. 1340 (1988);

9

*Chemtron v. Jones,* 72 F3d 341, 346-7 (3rd Cir. 1995); *In re Tannen Towers Corp.,* 235 B.R. 748, 756 (D.N.J. 1999). The Seventh Circuit put the matter very succinctly:

> The cases [mentioned above in the opinion] refer to creditors in the first class as "known creditors" and creditors in the second class as "unknown creditors," but this is imprecise. The issue is not whether the creditor is known to the trustee but whether the creditor's name and address can be readily ascertained by the trustee, making it feasible to send the creditor notice directly and not force him to read the fine print in the *Wall Street Journal.*

*Fogel*, 221 F3 955 at 963.

Perhaps the Kmart bankruptcy presents the most responsible and correct manner in which to effect Notice in a large bankruptcy. Kmart sent Notice to approximately one million potential claimants. These Notices were sent not only to those creditors listed on the Schedules but also to numerous others who were not listed. *In the Matter of Kmart Corp.,* 381 F3d 709, 716 (7th Cir., 2004). Kmart had inadvertently neglected to send any notice to some four thousand creditors, most of whom did not appear on Kmart's schedules. Kmart petitioned the Court for a Supplemental Bar Date to prevent creditors from irretrievably forfeiting their rights. The Court granted the motion. *Id.*

Kmart explained its reasoning concerning the Notice in Footnote 4. It said:

> ... when it sent out this initial notice, its objective was to "make extra sure that we had noticed the world as broadly as possible," including not only clearly legitimate claimants, but also those Kmart believed had "no basis on which they could be construed creditors." Hence, notice

10

> was sent to both scheduled and unscheduled putative claimants.

*Id.*

In the most restrictive reading of the law, creditors would be classified as "known" if they had a claim and the Debtor in Possession had access to their names and addresses through the books and records of the debtor.

### B. THE PROCEDURAL STANDARD

Notice is the cornerstone that underpins the bankruptcy process. *In re Savage Industries, Inc.,* 43 F3d 714, 720 (1st Cir. 1994). The 1978 Bankruptcy Reform Act removed all administrative responsibilities from the bankruptcy judge. *Id.*; *Matter of Sullivan Ford Sales,* 2 B.R. 350, 353-4 (B.R. Maine 1980). Therefore, it is the burden of the debtor to ensure parties-in-interest are given proper notice. *In re Savage*, 43 F3d at 721; *In re Maya Const. Co.,* 78 F3d 1395, 1399. The debtor need not send notice by mail where debtor can show:

> Notice by mail may be impracticable when, for example, the debtor has disappeared or his records have been destroyed and the names and addresses of his creditors are unavailable, or when the number of creditors with nominal claims is very large and the estate to be distributed may be insufficient to defray the costs of issuing the notices.

*Bankruptcy Procedure Manual; Federal Rules of Bankruptcy Procedure Annotated* (2007) (§ 2002:14 - Notice by Publication). Therefore, it is the debtor's burden to establish facts that would lead to a conclusion that notification by mail would be impracticable. The court must make a "finding of fact", based on the debtor's claim that notification by mail is impracticable before it can issue an order to notify by newspaper rather than by mail. *Rules of Bankruptcy Procedure,* § 2002 (l).

### II. APPLICATION OF THE LAW TO THE FACTS

Louise Curatola, the Appellant herein, was certainly a "known creditor". She was treated at SVCMC and would appear in its business records. No finding of fact has determined

11

that she was not treated or was otherwise "unknown". Of course, such knowledge would be in the sole custody and control of the debtor, and such knowledge, if it existed, should have been disclosed to the Appellant and to the court.

In its "Amended Motion Pursuant to Bankruptcy Rule 3003(c)(3) to Establish the Deadline for Filing Certain Proofs of Claim and Approving the Form and Manner of Notice Thereof" (Doc # 962) ("Motion for Publication Notice") in paragraph 22 of the Motion for Publication Notice listed under the rubric of "Publication Notice", the debtor seeks to notify by publication only "(I) those creditors to whom no other notice was sent and who are unknown or not reasonably ascertainable by the Debtors;...(iii) potential creditors with claims unknown by the Debtors." This bit of boilerplate 'hoists the Debtors on their own petard" not once but twice. First, in the motion they ask the court to allow newspaper notice of those claimants who were not reasonably ascertainable. Given the case law cited *supra,* a claimant was "known" or ascertainable if he or she could be discovered in the books and records of the Debtors. As already mentioned, the Debtors have not produced any evidence to support the proposition the Appellant could not be located in the books and records of the Debtors. Second, the Debtors requested that the court allow newspaper notice to "potential creditors with claims unknown by the Debtors." However, in its order "Pursuant to Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Certain Proofs of Claim and Approving the Form and Manner of Notice Thereof" (Doc # 1037) ("Order for Publication Notice"), the court in decretal paragraph 14 subsection (e) ordered that "all parties known to the Debtors a having potential claims against the Debtor's estates..." be noticed by mail. As the facts in this case show, the Appellant was a potential claimant because her state statutory time to file a claim against the hospital had not run at the time of the Bar Date. Yet, her exact claim was unknown. Therefore, the court did not approve newspaper notice where the amount of the potential creditor's claim was unknown. On both counts, the Debtors should have notified Appellant of the Bar Date by mail.

12

Furthermore, the Debtors requested in their Motion for Publication Notice and the court granted in its Order for Publication Notice a waiver of the Memorandum of Law required under Local Bankruptcy Rule 9013-1(b). Had the court not waived submission of the Memorandum of Law required under Rule 9013-1(b), the Appellant might of had the opportunity to study the specific and substantive reasons why she should not be noticed by mail. The court erred in waiving Rule 9013-1(b), and permitting the Appellant and similarly situated creditors be denied notice by mail with uninformative boilerplate rather than be given specific and substantive reasons for the allowance of their notice by newspaper.

The remainder of paragraph 22 in the Motion for Publication of Notice is simply a very red herring and makes no legally sufficient argument for denying the Appellant proper notice by mail. That portion of paragraph 22 states: "Providing notice in this fashion [by newspaper] is particularly appropriate in this case given that the Debtors' are health care providers. Conceivably any patient who has received health care services from Debtors, or any visitor to any of the Debtors' facilities, may believe that he or she has a claim against one or more of the Debtors. It is simply impractical for the Debtors to mail notice to every such individual, particularly where notice can be achieved more broadly and with less expense."

Here one is dealing with the *fallacy of the pseudo proof* and is committed in a verification statement which seems at first sight to be a precise and specific representation of reality but which proves, on closer inspection, to be literally meaningless. Let us parse the two reasons the Debtors give as reason for notice by newspaper: 1) any one who has had health care would have to notified by mail; 2) any visitor might have had an injury would require notice by mail. Debtors also employ the rethorical tick of making the comparatively small seem much larger. Actual figures are difficult to detect but according to the *Disclosure Statement* (Doc # 3206) (page 35, II A.1.) " In 2004 the last full calendar year prior to the Commencement Date, SVCMC had its affiliated debtors were recording more than 600,000 outpatient visits, 640,000 home care

13

visits and 92,000 inpatient discharges per year. The statute of limitations in New York for filing a Medical Malpractice case is two and one-half years from the time of the injury, absent continuous treatment. This limitations period would have potentially eliminated many possible but unfiled cases. Based upon the numbers above the Debtor should have sent out notices to the affected parties for a period extending from October 1, 2004 to March 30, 2006. This notice would have gone to 1,500,00 outpatients, 1,600,000 home care patients and 230,000 for inpatient discharges. All of these potential claimants should have been found in the books and records of the Debtors. The cost of this notice would be approximately $l,365,300.00, assuming no franking privilege. This cost is undoubtedly significant but not substantially so when considered in the context of a  $400 billion bankruptcy. *Disclosure Statement* (Doc # 3206) (page 72,O 3.).[1]

While 3 million notices might seem significant, such is inconsequential as against the rest of the world. The rhetorical trick is that visitors literally constitute the world. By pasting these to groups together, the Debtors make it appear that notice to the groups taken together is an impossible task. This not so, since the list of visitors that debtors might have to be notified is greatly diminished when it is realized that only those who notified hospital security or the police of an accident would have potential claims against the Debtors. Otherwise a claimant would have no basis for a law suit. Of course, this information would not be difficult to find and its incidence should be relatively small. The court neither made 'findings of fact' in reviewing the Debtors' Motion for Publication (Doc # 962) nor in its Order for Publication (Doc # 1037). The Debtors' conclusion that notice other than by newspaper is nothing more than a legal conclusion without the benefit of any factual support. Therefore, no basis existed

---

[1] The numbers quoted in the *Disclosure Statement* appear odd. For the citation above on January 31, 2007 over 2,850 general proofs of claim had been filed. This seems like an astonishing low number of claims in such a large bankruptcy. At the same time the number of Medical Malpractice claims at 700 with almost $400 billion filed in claims seems incredibly low. *Disclosure Statement* (Doc # 3206) (page 72,O 3. and page 67, L1.)

14

to deny the Appellant notice by mail on the basis of impracticability.

Furthermore, the last sentence from the quotation cited above is more than a mere legal conclusion, it reveals the marks of *the fallacy of the poorly framed question.* This fallacy occurs when the writer gives a more or less proper answer to an unasked question. The Debtors claim that it is impractical to claimants designated (I) and (iii) "... where such notice can be achieved more broadly and with less expense." Who could properly argue with broader and cheaper notice? The Supreme Court does not necessarily believe it is broader. The Court states in pertinent part the: "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane,* 339 U.S. at 317. Thus, the Court itself feels that newspaper notice is probably futile and does not indicate that it actually broadens notice. It certainly does not assert that such notice would be broader.

The *fallacy of the poorly framed question* begins with a reasonably correct answer (newspaper notice is broader and cheaper), but in effect, answers the wrong question. The answer does not answer the proper question, which is one of 'due process'. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314. The correct question was 'whether the notice was reasonably calculated, under all the circumstances, to apprise the parties in interest...'? The answer that newspaper notice is broader and cheaper, without more, is not an answer to the real question.

The bankruptcy court erred procedurally when it permitted, without its own findings of fact or those of the Debtor, the Debtor to notice the Appellant by newspaper rather than properly through the mails.

## CONCLUSION

For all the foregoing reasons, the Court should review *de novo* the law surrounding the bankruptcy court's denial of the Appellant's motion to allow filing of a late notice of claim and permit such claim to be filed since the bankruptcy court denied the Appellant "due process".

Respectfully submitted on November 21, 2007

        **MEISELMAN & GORDON, LLP**
        ATTORNEYS FOR APPELLANT
        150 BROADWAY - SUITE 1920
        NEW YORK, YORK 10038
        212.766.2200

        BY:

        _____
        MICHAEL L. MEISELMAN
        A MEMBER OF THE FIRM